UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| D.R.S., a minor, by his mother, SABRINA WALKER, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) 1:11-cv-0403-WTL-MJD<br>)<br>) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff's mother, Sabrina Walker, requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I. SUBSTANTIVE BACKGROUND

#### A. D.R.S.'s Background and Medical History

D.R.S. was born on February 5, 1999. He was preschool age when the application for SSI was filed and ten years old at the time of the hearing before the ALJ. D.R.S. has been diagnosed with attention deficit/hyperactivity disorder ("ADHD") and borderline intellectual functioning. He has experienced problems with retaining information and issues with anger.

On May 16, 2005, Gallahue Mental Health Services performed a mental health evaluation. The report stated that D.R.S. was very aggressive and that he fought with other children. It also noted that D.R.S. was frequently disruptive in the classroom.

D.R.S.'s special education teacher's evaluation on September 5, 2006, stated that D.R.S. was functioning at grade level in reading and math, but below one grade level in written language. It noted that D.R.S. had "obvious" or "serious" problems with two functional domains: acquiring and using information and attending and completing tasks.

On September 20, 2006, D.R.S. had a psychological examination. The examiner, psychologist Thomas Smith, stated that D.R.S. was "functioning low in the borderline range of intellectual functioning" and that he "exhibited symptoms of an attention deficit/hyperactivity disorder and his mother said he has these symptoms elsewhere." R. at 192. Dr. Smith diagnosed D.R.S. with attention deficit/hyperactivity disorder and borderline intellectual functioning. D.R.S.'s global assessment functioning ("GAF") score was 50. During that evaluation, D.R.S.'s mother reported that he was happy and playful. However, she also stated that D.R.S. was easily distracted, impulsive, and intrusive on others.

Gallahue reported on September 27, 2006, that D.R.S. had difficulties with his attention relating to ADHD symptoms, which resulted in consequences at school and home.

On October 2, 2006, at the Social Security Administration's request, state agency psychologist Dr. Joseph Pressner reviewed D.R.S.'s case and found that D.R.S. suffered from attention deficit hyperactivity disorder, borderline intellectual functioning, and language delay, but that these severe impairments did not meet, medically equal, or functionally equal the listing impairments. Dr. Pressner noted that D.R.S. had a marked limitation with regard to acquiring and using information. He stated, "claimant has comprehension problems and has problems expressing himself in written form." R. at 174. Dr. Pressner also found that D.R.S. had a less than marked limitation in attending and completing tasks and stated that D.R.S. had "a problem

in concentration and focusing on task." *Id.*

Speech pathologist Jodee Graham assessed D.R.S.'s speech and language on October 31, 2006. She observed that D.R.S. had moderately impaired language skills. Graham also stated, "He is currently able to functionally communicate with peers and adults. However, weak language skills may have a bigger impact in the future as expectations are raised." R. at 196.

On December 6, 2006, a behavioral care services medication progress report stated that D.R.S. was prescribed Concerta. The report stated that the medication was helping but that D.R.S. was hyper or aggressive at times when the medication wore off. It also noted that D.R.S. was having problems in reading and math.

In April 2007, D.R.S. underwent a psychological evaluation by the Warren Township School District. The psychologist, Susan McIlvried, observed D.R.S. and noted that "he was cooperative and attentive." R. at 240. D.R.S. completed a series of tests for the Wechsler Intelligence Scale for Children - Fourth Edition, in order to determine his intellectual functioning. D.R.S.'s overall IQ score, which is an estimate of verbal comprehension, perceptual reasoning, and working memory and processing speed, was 83. According to McIlvried, "this is descriptively classified within the low average range of ability and suggests that in comparison to the others his age, [D.R.S.] can learn at a rate that is somewhat lower. This performance was rated at the 13th percentile." R. at 242.

## B. Testimony

During the hearing, Walker testified that her son was retained in kindergarten due to his problems with remembering information. She stated that D.R.S.'s teacher in second grade believed that he should repeat second grade, but that he had advanced to third grade anyway.

Walker testified that D.R.S. had anger problems and that he got angry easily when things did not go his way. She discussed how D.R.S. fought with his sisters, and that he told her he hated her. Walker stated that D.R.S. seemed frustrated when working on homework and got angry with her if she tried to help him with it.

Walker stated that D.R.S. was prescribed Concerta and that the dosage had been increased from 18 mg to 27 mg at the recommendation of his psychiatrist. She testified that the medication improved D.R.S.'s concentration. However, D.R.S. had to be forced to take his medication.

Walker also testified that if D.R.S. did not have supervision, he may be a danger to himself. She discussed one occasion in which D.R.S. was angry and told her that he would put his face down on the stove.

## II. PROCEDURAL BACKGROUND

Walker initially filed her application for SSI on July 17, 2006, alleging that her minor son became disabled in 2004 due to borderline intellectual functioning and ADHD. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before ALJ Stephen Davis.Walker and her minor child were represented by counsel at the hearing, which was held on March 10, 2009. Walker testified at the hearing. The ALJ issued a decision denying Walker's application on April 15, 2009. The Appeals Council denied Walker's request for review of the ALJ's decision on January 26, 2011. Walker then filed this timely appeal.

### III. APPLICABLE STANDARD

To be eligible for SSI, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *See Stephens v. Heckler,* 766 F.2d 284, 285 (7th Cir. 1985).

In determining whether a claimant under the age of eighteen is disabled, the Commissioner employs a three-step sequential analysis. 20 C.F.R. § 416.924(a). At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition. 20 C.F.R. § 416.924(b). At step two, if the claimant does not have a "severe" impairment or a combination of impairments that is "severe" he is not disabled. 20 C.F.R. § 416.924(c). If the impairment is severe, the analysis proceeds under step three, under which the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments or that functionally equals the listings. 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings and meets the twelve-month duration requirement, the claimant is deemed disabled. 20 C.F.R. § 416.906.

In determining whether an impairment functionally equals the listings, the ALJ must examine six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring

for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The claimant's impairment or combination of impairments must result in "marked" limitations in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926(a). A "marked" limitation is one that seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that very seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.924a(e)(3)(i).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

## IV. THE ALJ'S DECISION

Applying the three-step analysis, the ALJ found at step one that D.R.S. had not engaged in substantial gainful activity at any time relevant to the decision. At step two, the ALJ determined that D.R.S. had severe impairments of borderline intellectual functioning and

ADHD. At step three of the analysis, the ALJ determined D.R.S. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the listings. The ALJ determined that D.R.S. had a marked limitation in acquiring and using information and a less-than-marked limitation in attending and completing tasks. The ALJ found that this was not enough to satisfy the criteria at step three and accordingly denied the claim.

## V. DISCUSSION

### A. The ALJ's Disability Determination at Step Three

Walker contends that the ALJ acted unfairly when rendering his decision denying the claim. Walker claims that at step three, the ALJ ignored and rejected substantial evidence showing D.R.S.'s disability. Walker provides a list of evidence in the record that she contends the ALJ did not discuss. However, although the ALJ must articulate his analysis of the evidence in his decision, he "is not required to address every piece of evidence or testimony," but must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Therefore, as long as the ALJ's reasoning behind his decision is logical and clear, the ALJ has not erred simply by not explicitly discussing every piece of evidence.

*1. Listing 112.05D*

Walker claims that D.R.S. meets Listing 112.05D. This listing requires that the claimant have a "full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. pt. 404, subpt. P, App. 1. Walker argues that the ALJ ignored D.R.S.'s IQ score of 70 that was assessed in September 2006, which Walker argues "prove[s] [D.R.S.'s] impairments met or equaled Listing 112.05D." However, the

ALJ did consider D.R.S.'s IQ score; he cited Exhibit 2F, a report from April 2007 in which D.R.S.'s most recent full-scale IQ score was 83. R. at 241. He also noted D.R.S.'s Wechsler Intelligence Scale for Children - Fourth Edition index scores of 87 for verbal comprehension, and 75 for perceptual reasoning. R. at 23. Although the ALJ does not reference D.R.S.'s other IQ scores, the record shows that his IQ score of 70 is the lowest score in the record, while his other IQ scores range from 79-85. R. at 192, 241, 299. Walker further contends that the ALJ gave no explanation for his choice of IQ scores except to state that the score of 83 was recent. However, this is in fact a reasonable explanation for citing one score over another. Given the range of other IQ scores in the record, as well as the recency of the cited IQ score, the ALJ's decision regarding whether D.R.S. met the first prong of the listing is supported by substantial evidence.

In addition to requiring a full scale IQ score of 60 through 70, Listing 112.05D also requires a physical or other mental impairment which additionally and significantly limits the claimant's functioning. However, since D.R.S. failed to meet the IQ score requirement, it was not necessary for the ALJ to analyze the second prong in any detail in order to conclude that D.R.S. did not meet Listing 112.05D. It was not erroneous for the ALJ to do so, and the Court similarly need not address part two of the analysis.

### 2. Listing 112.11

Walker also claims that D.R.S. meets Listing 112.11 for ADHD. This listing requires that there be medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, 20 C.F.R. pt. 404, subpt. P, App. 1, as well as at least two marked impairments in other areas such as social functioning and personal functioning. In support of her

argument, Walker provides a long list of records that she argues the ALJ rejected or ignored.[1] However, as already discussed, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), and the ALJ's decision is not erroneous just because he does not mention a specific record.

At any rate, the ALJ properly weighed the evidence when determining that D.R.S. did not meet or medically equal Listing 112.11 because D.R.S. did not meet the first prong requirements of marked inattention, marked impulsiveness, and marked hyperactivity. Walker first argues that the ALJ ignored that D.R.S. had been diagnosed with ADHD, but that is simply not the case. At the outset, the ALJ noted that D.R.S. suffered from ADHD that caused "more than minimal functional limitations." R. at 19. While Walker contends that the ALJ ignored reports that D.R.S. was disruptive and could not sit still in class, the ALJ did note D.R.S.'s "history of inattentiveness and distractability." R. at 20. The ALJ then went on to explain that "since [D.R.S.] has started taking Concerta his mother has reported that his concentration is not 'as scattered as it used to be' and his school grades have relatively improved" before concluding that "although severe, this impairment is not disabling." This conclusion is supported by substantial

---

[1] The Defendant urges this Court to find that the majority of Walker's initial brief is not argumentation at all and "does not preserve an issue for judicial review." Counsel for Walker resents Defendant's attack on counsel's argumentation "style" and argues that counsel has nevertheless been successful in many Social Security cases in this Court over the years. Plaintiff's counsel has indeed been successful in a number of cases; however, Defendant has a point: Plaintiff's counsel persists in using the same sloppy copy-and-paste format in case after case before this Court, despite this Court's repeated admonition to the contrary. Furthermore, even if ALJs repeatedly make similar errors as counsel contends, their errors are not so substantively comparable that counsel may effectively address them with shallow boilerplate. Plaintiff's Counsel would do well to abandon his template in favor of individually-tailored arguments and citations only to relevant case law, an approach that surely cut down on the amount of deciphering and extraction the Court must do when assessing counsel's arguments.

evidence in the record and thus the ALJ's decision was not in error as to the listing.

*3. Functional Evaluation*

The ALJ also found that D.R.S. did not have an impairment or combination of impairments that functionally equaled the listings. The ALJ determined that D.R.S. had limitations in only two of six functional domains – a marked limitation in acquiring and using information and a less than marked limitation in attending and completing tasks.

Walker contends that the ALJ ignored the reports that indicated that D.R.S. was disruptive in school and fought with his sisters. This is not the case. The ALJ specifically mentioned these incidents in his decision. The ALJ stated,

> In May 2005, the claimant's mother sought treatment for her son because of "major behavioral problems" he exhibited while attending kindergarten (Exhibit 1F at 17). In school, the claimant could not sit still, was easily distracted, and continually disruptive (*id.*). When at home, his mother reported he had difficulty sitting and watching television, constantly fought with his sisters, and a reluctance to try new things.

R. at 21. Walker also faults the ALJ for citing a September 2006 report by Dr. Smith, but ignoring many of the "severe symptoms" Dr. Smith noted, such as D.R.S.'s difficulty giving close attention to details. However, it is clear that the ALJ weighed this evidence with Walker's reports that since undergoing treatment and taking his medication, D.R.S.'s ADHD symptoms had decreased. R. at 21-22. For example, the ALJ weighed the evidence as follows:

> In April 2007, the claimant underwent reevaluation of his special education needs. Despite earlier complaints of the claimant's disruptive behavior, fighting in school and at home, and poor personal hygiene (Exhibits 1F at 9 and 6F at 2), by the time of the reevaluation the evidence indicated the claimant "appears to be at grade level in all areas and is mastering all educational standards" (Exhibit 10F at 10).

R. at 21.

Walker also contends that the ALJ ignored that D.R.S. was retained for an additional year

in kindergarten. In his decision, the ALJ referenced the most recent school psychologist report from D.R.S.'s assessment in April 2007 in order to evaluate D.R.S.'s progress in school. R. at 22. In this report, the psychologist noted that D.R.S. "has done an excellent job in learning to the best of his ability and attaining academic standards . . . It was a pleasure to have an opportunity to work with [D.R.S.] and appreciate his sense of humor, cooperativeness and manners." R. at 243. Given D.R.S.'s academic achievement in first grade, it was not error for the ALJ to not specifically address his retention in kindergarten.

Walker argues that the ALJ also failed to mention D.R.S.'s special education teacher's report in August 2006 regarding D.R.S.'s "obvious" and "serious" problems in acquiring and using information and in attending and completing tasks. R. at 180-81. However, D.R.S. began taking Concerta in September 2006, which marked the beginning of D.R.S.'s recorded improvement. Instead of referencing the school report prior to D.R.S. taking his medication, the ALJ cited D.R.S.'s most recent assessment in April 2007. In that report, the school psychologist stated that D.R.S. "appears to be at grade level in all areas and is mastering all educational standards." R. at 239. The ALJ also noted that teacher reports indicated that D.R.S.'s grades were improving. Given the recorded improvement in D.R.S.'s symptoms, it was not error for the ALJ to rely on this evidence in lieu of earlier reports. For these reasons, Walker's contentions that the ALJ ignored relevant evidence are without merit, and the ALJ's decision was not in error.

Finally, the ALJ's reasoning behind his disability determination was not perfunctory as Walker claims. As discussed, the ALJ explained his reasoning for this determination. The ALJ weighed the evidence, cited to records that supported both sides, and concluded that the record

11

showed D.R.S. had improved while taking his medication. The ALJ not only considered Walker's testimony, but also noted D.R.S.'s history, teacher evaluations, and medical records. For these reasons, the ALJ properly built an accurate and logical bridge from the evidence to his conclusion with respect to evaluating D.R.S.'s impairments.

### B. Failure to Use Psychological Medical Expert

Walker argues that the ALJ erred in not using a medical expert to aid him in evaluating D.R.S.'s possible impairments. However, an ALJ's decision to call a medical expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and an ALJ may rely on state agency physicians' opinions to determine disability. *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990) (citing *Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir. 1987). In this case, it was not necessary for the ALJ to call a medical expert to testify because there were sufficient records from state agency psychologists who had administered functional evaluations for the ALJ to review. 20 C.F.R. § 416.913(a)(1); R. at 173-77.

It is true, as Walker points out, that the opinions of the state agency psychologists were rendered in October 2006 and December 2006. However, the ALJ also considered later evidence and ultimately concluded that these reports "were still appropriate even with the new evidence added at the hearing level."[2] R. at 22. In this way, the ALJ considered not only the reports themselves, but also evaluated their relevance given recent developments. In addition, the ALJ considered various reports from 2006 and 2007 including evaluations from clinical psychologist

---

[2] The Court notes that Walker faults the ALJ for using records from 2006 instead of more recent records, while at the same time Walker argues that GAF and IQ scores taken in 2005 and 2006 should be used as evidence of disability. Furthermore, the Court points out that the 2006 reports were rendered before D.R.S. began taking medication, which suggests that these reports would be more favorable to the claimant's case anyway.

Thomas Smith, speech pathologist Jodee Graham, and school psychologist Susan McIlvried. R. at 192, 195, 243. Given the medical expert reports that the ALJ reviewed, the ALJ did not err when he did not call a medical expert.

### C. Credibility Determination

Finally, Walker argues that the ALJ's credibility determination is patently erroneous because the ALJ failed to make findings concerning the seven factors required to be considered when rejecting evidence of D.R.S.'s symptoms pursuant to SSR 96-7p.

The ALJ's assessment of a claimant's credibility is entitled to special deference and is not grounds for reversal and remand unless it is "patently wrong." *E.g., Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). When considering the claimant's symptoms, the ALJ must first determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. Then the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms. In assessing the credibility of the claimant, the ALJ need not cite findings on every factor, but he must articulate the reasons for his decision in such a way as to "make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (citing SSR 96-7p). In this case, the ALJ found that D.R.S.'s impairments could reasonably produce his symptoms, but that D.R.S.'s and his mother's statements regarding the duration, persistence, and limiting effects of D.R.S.'s symptoms were not credible.

Walker argues that the ALJ's determination ignores D.R.S.'s GAF scores of 50 and below, which scores Walker contends prove that D.R.S. is disabled. A GAF score measures both

13

the severity and the functional level of a claimant's symptoms and the "'final GAF rating always reflects the worse of the two' . . . the score does not reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 33 (Test Revision, 4th ed. 2000)).

As an initial matter, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Id.* (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)), and an ALJ's failure to cite a GAF score is accordingly not error in itself. Furthermore, while it is true that Walker does not specifically cite D.R.S.'s GAF scores in his determination, the ALJ did acknowledge that "testing shows the claimant has difficulty acquiring and processing information." The ALJ also referenced other reports in support of his determination. For example, the ALJ noted Walker's testimony about D.R.S.'s anger problems, his potential to be a danger to himself if not supervised, and the fact that he had pulled on his sister's neck while playing with her. R. at 22. However, the ALJ also noted that Walker testified that her son's signs and symptoms were decreasing since beginning regular treatment. Ultimately, the ALJ specifically considered the discrepancies between claimant's mother's reports and the record, which showed that D.R.S.'s signs and symptoms had decreased. The ALJ explained that "[h]is mother reports that he still has difficulty sitting still at home, for instance, when it is time for him to do his homework, while his teachers report improved attitude and achievement in school." Given the summary nature of the GAF score and the ALJ's citation to other, detailed contrary evidence, the ALJ's decision regarding credibility is supported by substantial evidence and is not in error.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 07/26/2012

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.